# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Richard A. White,**
**Petitioner Below, Petitioner**

**vs) No. 17-0071** (Nicholas County 13-C-124)

**Ralph Terry, Acting Warden,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Richard A. White, by counsel Christopher S. Moorehead, appeals the Circuit Court of Nicholas County's December 29, 2016, order denying his amended petition for writ of habeas corpus. Respondent Ralph Terry, Acting Warden, by counsel Shannon Frederick Kiser, filed a response.[1] On appeal, petitioner argues that the circuit court erred in denying him habeas corpus relief on the ground of ineffective assistance of counsel.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 2, 2009, petitioner shot and killed Harvey Hersman. Petitioner was subsequently indicted on one count of murder. Following a two-day trial, the jury found petitioner guilty of first-degree murder and did not recommend mercy. On August 23, 2011, the circuit court sentenced petitioner to life in prison without the possibility of parole. Petitioner appealed to this Court, and we affirmed his sentence and conviction. *See State v. White*, 231 W.Va. 270, 744 S.E.2d 668 (2013).

Thereafter, petitioner filed a pro se petition for writ of habeas corpus. The circuit court appointed counsel, and on August 6, 2015, petitioner filed an amended petition for writ of habeas corpus. In his amended petition, petitioner alleged ineffective assistance of counsel; denial of his

---

[1]Since the filing of the petition in this case, the warden at Mt. Olive Correctional Complex has changed, and the acting warden is now Ralph Terry. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

right to a fair, impartial, and objective jury; prosecutorial misconduct; and insufficient evidence. The circuit court held an omnibus hearing on January 14, 2016. By order entered on December 29, 2016, the circuit court denied petitioner's amended petition. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner challenges only the circuit court's denial of his ineffective assistance of counsel claims.[2] Specifically, petitioner claims that his attorney's representation was deficient for six distinct reasons: (1) counsel failed to attempt to suppress petitioner's statement to the police;[3] (2) counsel precluded petitioner from testifying at trial and failed to meaningfully advise petitioner as to his right to testify; (3) counsel failed to object to a jury instruction on self-defense that included a duty to retreat; (4) counsel failed to seek a mental health evaluation for competency, responsibility, and diminished capacity given petitioner's prior head injury; (5) counsel failed to strike a juror who was sympathetic to the West Virginia State Police; and (6) counsel failed to maintain an adversarial nature by largely failing to object during trial.

---

[2]Petitioner also conclusorily states that the combined effect of the asserted ineffective representation warrants a new trial. Petitioner, however, offers no law or analysis concerning the cumulative error doctrine, and he does not present this as an assignment of error. Thus, petitioner has not properly presented an allegation of cumulative error for this Court's review. *See* W.Va. R. App. Pro. 10(c)(7) ("The [petitioner's] brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error.").

[3]Petitioner asserts that the circuit court erroneously analyzed this ground under an ineffective assistance of counsel framework. Petitioner, however, presents his own assignment of error in terms of an ineffective assistance of counsel claim, and his argument makes references to counsel's "failure . . . to challenge the statement." Although petitioner failed to include his amended petition in the record on appeal, thereby preventing this Court from determining how the claim was presented in that filing, the transcript from petitioner's omnibus hearing indicates that this claim was presented as an ineffective assistance of counsel claim. Accordingly, to the extent that petitioner is arguing that this claim should have been addressed differently, we can discern no error in the circuit court's consideration of this ground as an ineffective assistance of counsel claim.

Petitioner's arguments presented on appeal were thoroughly addressed by the circuit court in its order denying petitioner habeas relief. The circuit court's order includes well-reasoned findings and conclusions as to the assignments of error now raised on appeal, and we find no error or abuse of discretion in the circuit court's denial of petitioner's amended petition. Because we find no clear error or abuse of discretion in the circuit court's order or record before us, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignments of error raised on appeal and direct the Clerk to attach a copy of the circuit court's December 29, 2016, "Final Order Denying Writ of Habeas Corpus and Dismissing Case" to this memorandum decision.

For the foregoing reasons, we affirm the circuit court's December 29, 2016, order denying petitioner's amended petition for writ of habeas corpus.

Affirmed.

**ISSUED:** February 23, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

IN THE CIRCUIT COURT OF NICHOLAS COUNTY, WEST VIRGINIA

CIRCUIT CLERK
NICHOLAS COUNTY, WV

STATE OF WEST VIRGINIA, ex. rel.  **2016 DEC 29  A 8: 44**
RICHARD WHITE,

Petitioner,

v.                                                       CIVIL ACTION NO. 13-C-124

DAVID BALLARD, Warden,
MT. OLIVE CORRECTIONAL COMPLEX,

Respondent.

## FINAL ORDER DENYING WRIT OF HABEAS CORPUS AND DISMISSING CASE

This matter came before this Court on the petition of Richard White, and was brought under the provisions of West Virginia Code § 53-4A-1, *et seq.*, as amended.  The Petitioner seeks to obtain post-conviction habeas corpus relief from a sentence imposed by this Court on the 30th day of March, 2011.

## I.  Factual and Procedural Background

1.      "It is undisputed that on the night of December 2, 2009, the Petitioner went to the home of the victim, Harvey Hersman (hereinafter "Mr. Hersman" or "the victim"), and shot him three times in the head resulting in his death." *State v. White*, 231 W. Va. 270, 276, 744 S.E.2d 668, 674 (2013).[1]

2.      The Petitioner was arrested on the charges at issue herein on the morning of December 3, 2009, and had an initial appearance before the Magistrate on December 3, 2009. At that time, the Petitioner indicated that he wished to hire an attorney to represent him and that he wanted a preliminary hearing.

---

[1] In ruling upon Petitioner's appeal, the Supreme Court of Appeals of West Virginia began its discussion of the factual and procedural background of this case with that brief statement of the facts.

3. On or about January 12, 2010, Williams C. Forbes informed the Court that he had been retained to represent the Petitioner.

4. On September 14, 2010, the Petitioner was indicted on one (1) count of Murder for the murder of Mr. Hersman,[2] initiating Case Number 10-F-79.

5. On September 21, 2010, the Petitioner appeared in person and by counsel, Mr. Forbes, for arraignment. At that time, Petitioner's trial was scheduled to begin on December 14, 2010.

6. On November 16, 2010, the State filed a Motion for Ruling on Admissibility of Evidence, seeking an admissibility ruling on various types of evidence, including Petitioner's recorded statement from December 3, 2009 (referred to herein as "the statement").

7. On November 19, 2010, Petitioner's counsel, Mr. Forbes, filed a Motion to Continue the trial, stating that, based on discovery materials received on November 17, 2010, counsel needed additional time to analyze the evidence, hire experts and prepare necessary pre-trial motions including, but not limited to, motions to suppress Petitioner's statements and motions relating to mental competency and criminal responsibility.

8. The Court granted counsel's motion and continued the trial to the January 2011 Term of Court.

9. At the Admissibility Hearing on January 21, 2011, the Court heard representations of the parties, testimony of witnesses, and ruled (a) that there was no constitutional impediment to the introduction by the State of the statement, subject to relevance; and (b) that certain of the items seized from the Petitioner's residence and property

---

[2] The Indictment incorrectly stated that the victim was "Harry Hershman" rather than "Harvey Hersman." The State moved the Court to amend the indictment to properly reflect the victim's name as Harvey Hersman, defense counsel had no objection, and the Court so amended the indictment.

2

were admissible. The Court concluded that the trial should proceed on March 29, 2011.[3] *See*, Transcript of Admissibility Hearing on January 21, 2011.

10.    On March 4, 2011, Petitioner's counsel filed a Motion to Hire Experts and a Motion to Introduce Testimony of Defendant's Mental Condition. Both of those motions related to the possibility that counsel would obtain a forensic psychiatric and/or psychological examination of the Petitioner.

11.    At a pre-trial hearing on March 14, 2011, Petitioner's counsel withdrew his previous Motion to Hire Experts, and the parties advised the Court that no pre-trial issues remained.

12.    On March 24, 2011, Petitioner's counsel filed proposed jury instructions, including a self-defense instruction. After the commencement of the trial, on March 30, 2011, counsel filed a supplemental proposed instruction regarding prior threats made by the decedent to the Petitioner, as it could relate to the Petitioner's state of mind.

13.    On March 25, 2011, Petitioner's counsel filed a Motion in Limine to Exclude Certain References to Controlled Substances, which motion was granted by the Court.

14.    The trial in Petitioner's criminal case (Case Number 10-F-79) commenced on March 29, 2011, and the Court proceeded with voir dire. A panel of twelve (12) jurors and one (1) alternate was selected. *See*, Trial Transcript, Vol. I.

15.    After the State rested its case on March 30, 2011, the Court advised Petitioner and Petitioner's counsel of defendant's right to testify in his own behalf, and Petitioner acknowledged his understanding of his right. Trial Transcript, Vol. III, pp. 80-81.

---

[3] A typographical error in the order from the Admissibility Hearing indicated that the trial would start on March 28, 2011. However, the trial was scheduled to and did begin on March 29, 2011.

3

16. On March 30, 2011, the jury returned a verdict of guilty on the sole count of Murder in the First Degree, with a recommendation of no mercy.

17. Pursuant to an extension of time granted by the Court, Mr. Forbes filed a Motion for New Trial on April 29, 2011, and a Supplement to that motion on May 3, 2011, alleging juror misconduct and prosecutorial misconduct.

18. Petitioner's Motion for New Trial was heard on May 5, 2011, at which time the Court heard testimony from Denis Paschke and Shannon Adkins. The Court then continued the hearing. *See,* Transcript of Post-Trial Motion Hearing on May 5, 2011.

19. At a further hearing on May 27, 2011, the Court heard the testimony of Robert W. George, Jr., Patty Sue Payne, Harley C. Barker, Paul Brandon Hypes and Catherine Hypes. The Court then found that the juror violations alleged by the Petitioner in his Motion for a New Trial were not shown to have occurred, and that no juror misconduct had occurred. A decision on the issue of prosecutorial misconduct was held in abeyance pending briefs to be filed by the parties. *See,* Transcript of Motions Hearing on May 27, 2011.

20. The parties briefed the prosecutorial misconduct issue, specifically regarding the State's decision not to call Judy Stewart as a witness. Thereafter, at a hearing on August 3, 2011, this Court denied the Motion for a New Trial on the grounds of prosecutorial misconduct, as no prejudice to the Petitioner was found.

21. On August 3, 2011, the Petitioner waived the pre-sentence investigation and was sentenced to the mandatory term of life in prison without mercy.

22. On August 3, 2011, Mr. Forbes moved the Court to be relieved as counsel for the Petitioner, which motion was granted. Thereafter, Petitioner filed an affidavit of financial

4

inability to employ counsel, so the Court appointed Mr. Forbes to represent the Petitioner with the appeal of his conviction.

23.    A timely Notice of Intent to Appeal was file by Petitioner, through Mr. Forbes, on September 16, 2011.

24.    Mr. Forbes prepared and argued Petitioner's appeal to the Supreme Court of Appeals of West Virginia. By written opinion filed June 7, 2013, the Supreme Court affirmed Petitioner's conviction and sentence. *State v. White*, 231 W.Va. 270, 744 S.E.2d 688 (2013).

25.    Petitioner initiated this case *pro se* on August 29, 2013, by filing a *Pro Se* Petition for Writ of Habeas Corpus Under West Virginia Code 53-4A-1 (the "*Pro Se* Petition"), raising one (1) ground for relief: Ineffective Assistance of Counsel.[4]

26.    On August 6, 2015, Petitioner, by counsel, filed his Amended Petition for a Writ of Habeas Corpus Ad Subjiciendum [sic] and Memorandum in Support (collectively referred to herein as the "Amended Petition"), which raised ten (10) grounds for relief that can be grouped into the following four (4) grounds:

A.  Ineffective Assistance of Counsel[5]

B.  Denial of Petitioner's right to a fair, impartial and objective jury.

C.  Prosecutorial Misconduct

---

[4] In his *Pro Se Petition*, Petitioner alleged that his trial counsel was ineffective for the following reasons:
   A.  Trial Counsel Rendered Ineffective Assistance, In Violation of the State and Federal Constitution By Virtue of Counsels [sic] Failure to Challenge Petitioner's Statement As the Fruit of An Illegal Arrest.
   B.  Trial Counsel Rendered Ineffective Assistance, In Violation of the State and Federal Constitution When He Foreclosed Petitioner From Testifying In His Own Behalf.
   C.  Trial Counsel Rendered Ineffective Assistance In Violation of the State and Federal Constitutions When Counsel Waived Petitioner's Self-Defense Jury Instruction, and; Failed to Object to the Giving of the Erroneous Self-Defense Instruction.
   D.  Trial Counsel Rendered Ineffective Assistance In Violation of the State and Federal Constitutions When Counsel Failed to Ensure That the Jury Verdict Constituted A Unanimous Decision of Guilt Beyond A Reasonable Doubt.

[5] The first seven (7) grounds listed in the Amended Petition allege that Petitioner was denied effective assistance of counsel for various reasons discussed below.

5

D. Insufficient Evidence

27. At a status hearing on October 5, 2015, this Court ordered Respondent to file a Response within thirty (30) days.

28. Respondent's Answer to the Amended Petition was filed on November 20, 2015.

29. On January 14, 2016, this Court held an omnibus evidentiary hearing. The only witness to testify was William C. Forbes, Petitioner's attorney in the underlying criminal trial in Case Number 10-F-79.

30. Petitioner's counsel had the Petitioner thoroughly review a Checklist of Grounds for Post-Conviction Habeas Corpus Relief, which included a list of possible grounds for relief, pursuant to *Losh v. McKenzie*, 166 W. Va. 752, 277 S.E.2d 606 (1981). The Petitioner initialed each of the following grounds for habeas corpus relief as grounds he claimed for relief:

A. (15) Coerced confessions

B. (16) Suppression of helpful evidence by prosecutor

C. (21) Ineffective assistance of counsel

D. (34) Refusal to subpoena witnesses

E. (39) Claim of incompetence as time of offense as opposed to time of trial

F. (41) Constitutional errors in evidentiary rulings

G. (42) Instructions to the Jury

H. (45) Sufficiency of evidence

Although Petitioner initialed each of the above-grounds, he failed to sign the form. His counsel was to have him sign the form, but as of the date of this order, the Court has not received a signed form. A copy of the initialed form has been placed in the court file.

31. Following the taking of the evidence, the Court entered a briefing schedule, directing the parties to submit proposed findings of fact. On February 24, 2016, Petitioner filed his Proposed Findings of Fact and Conclusions of Law; and on March 15, 2016, Respondent filed Respondent's Proposed Findings of Fact and Conclusions of Law.

## II. Petitioner's Grounds for Habeas Corpus Relief

Based upon Petitioner's Amended Petition and the completed *Losh* list, the Court finds that Petitioner's grounds for habeas corpus relief are:

A. Ineffective Assistance of Counsel, in that trial counsel
1. failed to challenge the admissibility of Petitioner's statement while in custody;
2. precluded Petitioner from testifying on his own behalf;
3. waived Petitioner's self-defense jury instruction and failed to object to the erroneous self-defense instruction given to the jury;
4. failed to have Petitioner evaluated by a mental health expert for purposes of competency, responsibility and diminished capacity;
5. failed to strike a juror who admittedly favored the West Virginia State Police when that agency investigated the incident herein;
6. failed to object to evidence being admitted by State throughout trial; and
7. failed to adequately discuss a plea offer of voluntary manslaughter made to Petitioner by the State.
B. Denial of fair, impartial and objective jury
C. Prosecutorial misconduct in that Petitioner was denied a fair trial where the State failed to inform Petitioner of a witness who said she had moved body, but rather, dismissed the witness
D. Insufficient evidence existed at trial to convict on "first degree murder."

A petition for a writ of habeas corpus pursuant to West Virginia Code Sections 53-4A-1, *et seq.* "serves as a collateral attack upon a conviction under the claim that the conviction was

7

obtained in violation of the state or federal constitution." *Edwards v. Leverette*, 163 W. Va. 571, 576, 258 S.E.2d 436, 439 (1979). To prevail in post-conviction habeas corpus proceedings, the "petitioner has the burden of proving by a preponderance of the evidence the allegations contained in his petition or affidavit which would warrant his release." Syl. Pt. 1, *in part, Scott v. Boles*, 150 W. Va. 453, 147 S.E.2d 486 (1966). After carefully considering the parties' pleadings, along with all of the evidence and arguments presented in connection therewith, for the reasons explained below, the Court concludes that the Petitioner has failed to establish any basis for the requested post-conviction relief.

## III. Discussion

### A. Ineffective Assistance of Counsel

Ineffective assistance of counsel was the only ground for relief raised in Petitioner's *Pro Se* Petition and is the primary ground for relief at issue in the Amended Petition. Specifically, the first seven (7) contentions in the Amended Petition all relate to allegations that the Petitioner was denied effective assistance of counsel under the 6th and 14th Amendments to the United States Constitution and Article 3, Section 14 of the West Virginia Constitution. Each of those seven (7) grounds is addressed in detail below.

In the State of West Virginia, claims of ineffective assistance of counsel are evaluated by the standards set forth in *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). In *Miller*, the Supreme Court of Appeals of West Virginia adopted the two-prong test established by the United States Supreme Court's ruling in *Strickland v. Washington*, which held that a petitioner most prove that:

> (1) Counsel's performance was deficient under an objective standard of reasonableness; and
>
> (2) there is a reasonable probability that, but for counsel's

8

unprofessional errors, the results of the proceedings would have been different.

Syl. Pt. 5, *Miller*, 194 W. Va. 3, 459 S.E.2d 114, *citing Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).

With respect to the first, performance-prong, the *Miller* Court offered the additional guidance that:

> [i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 6, *Id.* Where counsel's alleged ineffective assistance arises from trial "'strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests; unless no reasonably qualified defense attorney would have so acted in the defense of an accused.' Syl. Pt. 21, *State v. Thomas*, 157 W.Va. 640 (1974)." Syl. Pt. 3, *State v. Frye*, 221 W.Va. 154, 650 S.E.2d 574 (2006).

Quoting *Strickland*, the West Virginia Supreme Court noted that, in reviewing counsel's performance, a court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Miller*, 194 W. Va. at 15, 459 S.E.2d at 126, *quoting Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, 90 L.Ed.2d at 694.

That presumption was further explained in the *Miller* opinion, with the court stating that:

> . . . we always should presume strongly that counsel's performance was reasonable and adequate. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a "wide range." The test of ineffectiveness has little or nothing to do with what the *best*

9

> lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

*Miller*, 194 W. Va. at 16, 459 S.E.2d at 127.

Given this guidance, the Court has carefully considered the pleadings and evidence adduced at the evidentiary hearing, through which Petitioner argues various reasons he believes he was denied effective assistance of counsel. The Court addresses each of the Petitioner's claims below.

### 1. Failure to challenge the admissibility of Petitioner's statement

Petitioner first contends that his trial counsel was ineffective due to the failure to challenge the admissibility of Petitioner's statement to police on December 3, 2009. Petitioner states his trial counsel knew that he gave the statement while suffering from sleep deprivation and after taking nerve medication, but still informed the Court that he agreed that there was no constitutional impediment to the introduction of the statement. Based on counsel's acquiescence, the Court allowed the statement into evidence at trial.

Having considered the parties' arguments and the transcript of the admissibility hearing on January 21, 2011, the Court finds no evidence that counsel's failure to object to the admissibility of the statement was due to a lack of knowledge or investigation. To the contrary, counsel's decision not to object to the statement was clearly a strategic decision by counsel and within the wide range of reasonable professional assistance. *See, Miller*, 194 W. Va. at 16, 459 S.E.2d at 127.

At the pre-trial admissibility hearing on January 21, 2011, the State represented to the Court that Mr. Forbes did not have any objection to the evidence the State sought to

10

introduce, including Defendant's statement from December 3, 2009. Mr. Forbes then informed the Court:

> MR. FORBES: We've listened to the recorded statement, and I've been over the evidence; and I believe and I've explained to my client that we don't believe that there's any constitutional violation to the statement that he made, which is on tape and lasted - - what? - - an hour or plus, in that range.
>
> MR. MILAM: Yes.
>
> MR. FORBES: And it contains evidence that we would want to introduce, as well as evidence probably that the prosecutor would want to introduce.
> We believe that the *Miranda* rights were complied with in that matter, and the video speaks for itself in terms of there being no constitutional violation.

Transcript of Admissibility Hearing on January 21, 2011, p. 5, lines 12-24, and p. 6, lines 1-2. Later in that hearing, Mr. Forbes again stated that "I would agree that there's no constitutional impediment to the introduction of the statement. And like I say, for a lot of reasons, the statement is probably equally useful to us as it is to the prosecution." Transcript, p. 17, lines 4-8. Additionally, during his opening statements at trial, Mr. Forbes made several references to Petitioner's statement and how it would show that Petitioner was acting out of self-defense. Trial Transcript, Vol. I, pp. 109, 116.

In addition to Mr. Forbes' intention of using the statement himself, he also acknowledged that he had no legal basis to move for suppression of the statement. At the Admissibility Hearing on January 21, 2011, Mr. Forbes recognized that the Petitioner was properly Mirandized prior to giving the statement. *See*, Transcript of Admissibility Hearing on January 21, 2011, p. 5, lines 12-24, and p. 6, lines 1-2. During that Admissibility Hearing, the Court also heard testimony from Trooper Brad L. Mankins who took the statement from Petitioner. He advised that Petitioner never indicated that he did not understand his rights or

11

that he might be under the influence of drugs or alcohol. Transcript, p. 12, lines 19-21; p. 13, lines 12-22.[6] For these reasons, at the evidentiary hearing in this case, Mr. Forbes testified that he did not file a motion to suppress the statement because he knew it would have been overruled. If counsel had no legitimate grounds to object to admissibility of the statement, it would have been inappropriate to challenge the statement.

Based on all of the foregoing, it is evident that Mr. Forbes' decision to not object to the introduction of the Defendant's statement arises from trial "strategy, tactics and arguable courses of action . . ." See, Syl. Pt. 3, in part, Frye, 221 W. Va. 154, 650 S.E.2d 574. As such, counsel's performance was not deficient under an objective standard of reasonableness. See, Syl. Pt. 5, in part, Miller, 194 W. Va. 3, 459 S.E.2d 114. Petitioner failed to meet his burden of proving by a preponderance of the evidence that his counsel was ineffective for failing to object to the admissibility of the statement given on December 3, 2009.

### 2. Counsel precluded Petitioner from testifying on his own behalf

In Petitioner's second ground for his ineffective assistance of counsel claim, Petitioner alleges that his counsel prevented him from testifying in his own behalf at trial, even though he wanted to tell his side of what happened on the night in question. Respondent responds that the Court advised Petitioner of his right to testify, and also that, if counsel advised Petitioner that it was not in his best interest to testify, then that advice constituted a strategic decision.

---

[6] Similarly, during his trial testimony, Lieutenant Mankins again testified that Petitioner never indicated that he did not understand his rights or that he might be under the influence of drugs or alcohol. Trial Transcript, Vol. II, pp. 153-154. Upon cross-examination, Lieutenant Mankins further testified that Petitioner very willingly gave his statement and "was a talker." Trial Transcript, Vol. II, p. 157.

12

A review of the trial transcript does reveal that Petitioner was fully informed of his right to testify on his own behalf. On the morning of the second day of trial, the Court asked Mr. Forbes what witnesses he would be presenting during his case that afternoon, and he responded that he had not talked to his client yet, but "would have maybe one short witness if he chooses not to testify." Trial Transcript, Vol. III, p. 69. Mr. Forbes then asked for fifteen more minutes. Trial Transcript, Vol. III, p. 71. After the close of the State's case, the Court informed Petitioner on the record of his right to testify or his right to remain silent. Trial Transcript, Vol. III, p. 80-81. The Petitioner responded to the Court that he understood his two options. Trial Transcript, Vol. III, p. 81. Mr. Forbes indicated that the defense would like to take one witness before lunch and then discuss whether or not the Petitioner would testify. Trial Transcript, Vol. III, p. 81.

At the evidentiary hearing in this case, Mr. Forbes testified that he and the Petitioner discussed Petitioner's right to testify multiple times before trial and during trial. Mr. Forbes testified that he did not unilaterally decide that Petitioner would not testify. Mr. Forbes further stated that there were good, strategic reasons for the Petitioner to not testify on his own behalf.

Accordingly, the Court finds that Petitioner was fully informed of his right to testify. Furthermore, to the extent that Mr. Forbes advised the Petitioner to not testify, that advice was a strategic decision, and "a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." *See*, Syl. Pt. 6, in part, *Miller*, 194 W. Va. 3, 459 S.E.2d 114. Therefore, counsel's performance was not deficient under an objective standard of reasonableness. *See*, Syl. Pt. 5, in part, *Id.* Petitioner failed to meet his burden of proving

13

by a preponderance of the evidence that his counsel was ineffective for precluding Petitioner from testifying on his own behalf, and his is not entitled to habeas corpus relief on this basis.

### 3. Self-Defense jury instruction

Petitioner's next alleged error is the self-defense jury instruction included in the charge to the jury. Counsel for Petitioner twice, on the record, informed the Court that he had no objection to the jury charge, which included the following instruction:

> ONE OF THE QUESTIONS TO BE DETERMINED BY YOU IN THIS CASE IS WHETHER OR NOT THIS DEFENDANT ACTED IN **SELF-DEFENSE** SO AS TO JUSTIFY HIS ACTS. UNDER THE LAWS OF THIS STATE, IF THIS DEFENDANT WAS NOT THE AGGRESSOR, AND HAD REASONABLE GROUNDS TO BELIEVE, AND ACTUALLY DID BELIEVE, THAT HE OR ANOTHER PERSON WAS IN IMMINENT DANGER OF DEATH OR SERIOUS BODILY HARM FROM WHICH HE COULD SAVE HIMSELF OR SUCH OTHER PERSON ONLY BY USING DEADLY FORCE AGAINST HIS ASSAILANT, HE HAD THE RIGHT TO EMPLOY DEADLY FORCE IN ORDER TO DEFEND HIMSELF OR SUCH OTHER PERSON. BY DEADLY FORCE IS MEANT FORCE THAT IS LIKELY TO CAUSE DEATH OR SERIOUS BODILY HARM.
>
> THE CIRCUMSTANCES UNDER WHICH THE DEFENDANT ACTED MUST HAVE BEEN SUCH AS TO PRODUCE IN THE MIND OF A REASONABLY PRUDENT PERSON, SIMILARLY SITUATED, THE REASONABLE BELIEF THAT THE OTHER PERSON WAS THEN ABOUT TO KILL HIM OR ANOTHER OR TO DO HIM OR ANOTHER SERIOUS BODILY HARM. IN ADDITION, THIS DEFENDANT MUST HAVE ACTUALLY BELIEVED THAT HE OR ANOTHER PERSON WAS IN IMMINENT DANGER OF DEATH OR SERIOUS BODILY HARM AND THAT DEADLY FORCE MUST BE USED TO REPEL IT. FOR THE PURPOSE OF DETERMINING THE DEFENDANT'S STATE OF MIND AT THE TIME THE DEADLY FORCE WAS USED, IN DETERMINING WHETHER THE DEFENDANT ACTED IN SELF-DEFENSE, YOU MAY CONSIDER EVIDENCE SHOWING THAT THE

14

DECEDENT, HARVEY HERSMAN, HAD PREVIOUSLY THREATENED THE LIFE OF THE DEFENDANT.

IN ORDER FOR THIS DEFENDANT TO HAVE BEEN JUSTIFIED IN THE USE OF DEADLY FORCE IN SELF-DEFENSE, HE MUST NOT HAVE PROVOKED THE ASSAULT ON HIMSELF OR HAVE BEEN THE AGGRESSOR. MERE WORDS, WITHOUT MORE, DO NOT CONSTITUTE PROVOCATION OR AGGRESSION.

WHEN THERE IS A QUARREL BETWEEN TWO OR MORE PERSONS AND BOTH ARE AT FAULT, AND A COMBAT AS A RESULT OF SUCH QUARREL TAKES PLACE AND DEATH ENSUES AS A RESULT, IN ORDER TO REDUCE THE OFFENSE TO KILLING IN SELF-DEFENSE, TWO THINGS MUST APPEAR FROM THE EVIDENCE AND CIRCUMSTANCES IN THE CASE: (1) FIRST, BEFORE THE MORTAL SHOT WAS FIRED, THE PERSON FIRING THE SHOT DECLINED FURTHER COMBAT, AND (2) SECOND, THAT HE NECESSARILY KILLED THE DECEASED IN ORDER TO PRESERVE HIS OWN LIFE OR THAT OF ANOTHER OR TO PROTECT HIMSELF OR ANOTHER FROM GREAT BODILY HARM. IF EVIDENCE OF SELF-DEFENSE IS PRESENT, THE STATE MUST PROVE BEYOND A REASONABLE DOUBT THAT THIS DEFENDANT DID NOT ACT IN SELF-DEFENSE. IF YOU FIND THAT THE STATE HAS FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THIS DEFENDANT DID NOT ACT IN SELF-DEFENSE, YOU MUST FIND THIS DEFENDANT NOT GUILTY. IN OTHER WORDS, IF YOU HAVE A REASONABLE DOUBT AS TO WHETHER OR NOT THIS DEFENDANT ACTED IN SELF-DEFENSE, YOUR VERDICT MUST BE NOT GUILTY.

WHETHER A HOMICIDE COULD OTHERWISE BE CHARACTERIZED AS MURDER IN THE FIRST DEGREE, MURDER IN THE SECOND DEGREE, VOLUNTARY MANSLAUGHTER OR INVOLUNTARY MANSLAUGHTER, IF YOU SHOULD FIND THAT THE DEFENDANT'S CONDUCT WAS CARRIED OUT IN SELF-DEFENSE, THEN THE HOMICIDE IS JUSTIFIED AND THE DEFENDANT IS NOT GUILTY OF THE CRIMES CHARGED.

Petitioner argues that his counsel was ineffective because he permitted the charge to include a duty to retreat. However, Petitioner's counsel did address the duty to retreat, and both

15

counsel represented to the Court on the morning of the second day of trial, March 30, 2011, that they agreed that there was not a duty to retreat, to which the Court agreed. Trial Transcript, Vol. III, p. 8-9. At the lunch break on March 30, 2011, the Court indicated that it had changed the charge and included the self-defense instruction, as set forth above, over the State's objection. Trial Transcript, Vol. III, p.108. Additionally, contrary to Petitioner's assertion, the self-defense instruction does not include a specific duty to retreat.

Petitioner contends that his proposed jury instruction[7] was more appropriate and that Mr. Forbes should have insisted on its inclusion in the charge. Specifically, Petitioner references the proposed language that "he may act upon such appearances [of danger] and without retreating, use deadly force against his assailant. . ." Petitioner argues that it was ineffective assistance of counsel for Mr. Forbes to waive the objection and accept the jury instruction without demanding this language be included.

Having reviewed the transcripts and the charge, the Court does not find that Petitioner has met his burden of proving, by a preponderance of the evidence, that his counsel was ineffective for failing to object to the self-defense jury instruction, as included in the charge. Whether or not counsel should have insisted on the inclusion of a "no duty to retreat" language is a matter of "strategy, tactics and arguable courses of action." Syl. Pt. 3, in part, *Frye*, 221 W. Va. 154, 650 S.E.2d 574. Petitioner cannot prove that "no reasonably qualified defense attorney would have so acted . . ." *Id.* Therefore, Counsel's performance was not deficient under an objective standard of reasonableness. *See,* Syl. Pt. 5, in part, *Miller*, 194 W. Va. 3, 459 S.E.2d 114.

---

[7] Defendant's proposed jury instructions were filed on March 24, 2011.

16

4. **Failure to have Petitioner evaluated by a mental health expert for purposes of competency, responsibility and diminished capacity**

As Petitioner's fourth basis for his ineffective assistance of counsel claim, Petitioner claims that his counsel erred by failing to have Petitioner evaluated by a mental health expert. Petitioner contends that his counsel was aware that he suffered from a severe head injury, so should have had Petitioner examined to determine Petitioner's competency to stand trial, criminal responsibility and/or diminished capacity. Having reviewed the record and transcripts in Petitioner's criminal case, this Court finds that Petitioner's counsel thoroughly considered Petitioner's head injury and made an informed, strategic decision not to have Petitioner evaluated.

Specifically, Mr. Forbes raised the competency issue at the admissibility hearing on January 21, 2011, and asked the Court if it would enter an order for him to obtain psychiatric records, if necessary. The Court indicated that it would. Transcript of Admissibility Hearing on January 21, 2011, pp. 50-51. In asking, Mr. Forbes stated to the Court that:

> As I referred to in earlier testimony, my client had a significant head injury which lead to a full disability some years ago as a result of a coal-mine accident of some kind.
>
> As of a result of that, there were diminished performance aspects to him; and, of course, he's been medicated for various and sundry things related to the head injury pretty much continuously, up until this point, anyway.
>
> In my dealings with Richard, he's been in my opinion, competent to assist counsel and competent to stand trial.
>
> However, last year, I believe, or the year before last, in a divorce/domestic proceedings of some kind, I believe a competency hearing was held and that, my understanding was, he was found competent to proceed in those hearings.

17

Transcript of Admissibility Hearing on January 21, 2011, p. 50, lines 17-24. Mr. Forbes considered Petitioner's disability, recognized that Petitioner was able to assist him in preparing his defense and further noted that Petitioner had previously been found competent in another proceeding. Therefore, Mr. Forbes made the strategic decision that it was not necessary to have Petitioner evaluated by a mental health expert.

In reviewing Mr. Forbe's representation of the Petitioner, "[t]he test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." *Miller*, 194 W. Va. at 16, 459 S.E.2d at 127. The Court is required to determine if Mr. Forbe's "omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of [his] strategic decisions." Syl. Pt. 6, in part, *Miller*, 194 W. Va. 3, 459 S.E.2d 114. Therefore, even though Mr. Forbes testified at the evidentiary hearing that, in hind-sight, he probably should have had Petitioner evaluated, that does not render his strategic decision at the time of trial erroneous. Based on the information Mr. Forbes had prior to trial, he determined that it was not necessary or in his client's best interest to have Petitioner evaluated. Accordingly, this Court does not find that Mr. Forbes representation of Petitioner was deficient due to Mr. Forbes' decision not to have Petitioner evaluated by a mental health expert.

5.      **Failure to strike juror who admittedly favored the WV State Police**

Petitioner's fifth argument as to why his counsel was ineffective is that his counsel failed to strike Juror Harper, who Petitioner claims favored the West Virginia State Police. Petitioner states that his counsel's strategy involved attacking the West Virginia State Police's

18

investigation, so counsel should not have permitted a juror to remain on the panel who "admittedly favored" the West Virginia State Police. The juror to whom Petitioner refers is Juror Harper. Although Juror Harper did acknowledge some connection with the West Virginia State Police, he never did state that he "favored" the State Police. Contrary to Petitioner's argument, Juror Harper indicated that his knowledge of the State Police would not cause him to give any greater weight to testimony of Troopers.

Specifically, during voir dire, Juror Harper indicated that he knew the witness, Trooper Brad Reed. He stated that he used to live beside his father-in-law and that his wife helped plan their wedding approximately two or three years earlier. The Court asked Juror Harper if that contact with Trooper Reed would in any way cause the juror to judge his testimony differently than any other witness, and Juror Harper stated "No" and indicated that he could weigh Trooper Reed's testimony the same as any other witness. Juror Harper again indicated that he knew Sergeant R.D. Lilly and that his father-in-law is a retired trooper and that he knows most of the Troopers. The Court asked Juror Harper if the fact that he knows Sergeant Lilly would in any way affect his judgment in this case, and Juror Harper responded "No." He further responded that he could weigh the testimony of any of the troopers the same as he would any other witness. Trial Transcript, Vol. I, pp. 40-42.

At the evidentiary hearing, Mr. Forbes did not have a clear recollection of Juror Harper's testimony during voir dire. However, Mr. Forbes did state that he discussed it and made the decision to not strike the juror. A review of the voir dire transcript reveals that Mr. Forbes thoroughly examined the jurors, weighed their ability to serve impartially, and moved to have jurors struck that he felt could not be impartial.[8] Even though Mr. Forbes

---

[8] During voir dire, Mr. Forbes asked that two (2) jurors be struck for cause. After further inquiry, the Court granted Mr. Forbes' motion, striking Juror Schaub, as he knew the Prosecuting Attorney and Trooper

successfully argued for the dismissal of multiple other jurors, he did not so move regarding Juror Harper. Therefore, it is clear that the decision to permit Juror Harper to remain on the jury panel was intentional and a trial strategy.

Even though this Court cannot state with certainty Mr. Forbes' reasoning at the time of voir dire, this Court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Miller*, 194 W. Va. at 15, 459 S.E.2d at 126. Petitioner has not proven that Mr. Forbes' performance was deficient under an objective standard of reasonableness. Syl. Pt. 5, in part, *Id.* Namely, Petitioner has not shown that "no reasonably qualified defense attorney would have so acted." Syl. Pt. 3, in part, *Frye*, 221 W. Va. 154, 650 S.E.2d 574. Therefore, Petitioner is not entitled to habeas corpus relief on the basis that Mr. Forbes failed to strike Juror Harper.

6. **Failure to object to State's evidence admitted throughout trial**

Petitioner next contends that he was denied effective assistance of counsel because his counsel, Mr. Forbes, rarely made objections during trial and did not even object to the *Miranda* form or Petitioner's statement. Despite this broad assertion, Petitioner produces no evidence or even argument that the *Miranda* form and other unspecified evidence was

---

Thomas socially, and Juror Facemire, who was a cousin to the Assistant Prosecuting Attorney present in the courtroom, Jonathan Sweeney. Trial Transcript, Vol. I, pp. 25-28.

Juror Bradford was also dismissed as he knew the Defendant and admitted that his previous knowledge of the Defendant may cause him pressure to decide one way or another. Trial Transcript, Vol. I, pp. 32-33.

During voir dire, Juror Malcomb indicated that she knew Judy Stewart, who was on the witness list, as she worked at Seneca and Judy Stewart was a client there. At the bench conference, the Prosecuting Attorney indicated that Judy Stewart would probably not even testify. Nevertheless, Mr. Forbes indicated that he believed she should be struck, and the Court did dismiss Juror Malcomb. Trial Transcript, Vol. I, pp. 43-44.

Mr. Forbes moved to strike, for cause, Juror Wiseman who had employment orientation the next day with the DOT, and he could not do orientation again until the next month if he missed it. Trial Transcript, Vol. I, pp. 59-60. The Court granted Mr. Forbe's motion.

Finally, Mr. Forbes moved to strike, for cause, Juror Kennan, who said she would be unable to look at photographs with blood. Trial Transcript, Vol. I, pp. 61-62. The Court granted Mr. Forbe's motion.

20

inadmissible to warrant an objection. At the evidentiary hearing in this case, Mr. Forbes testified that he would not fight over evidence unless there is really something to fight over. He stated that he makes a judgment call on what is worth an objection, because he believes that objecting turns jurors against you. Notably, Mr. Forbes testified that he did what he thought was appropriate in terms of the evidence being admitted.

As with Petitioner's other grounds for claiming ineffective assistance of counsel, Petitioner has again failed to prove that Mr. Forbes' "performance was deficient under an objective standard of reasonableness." Syl. Pt. 5, in part, *Miller*, 194 W. Va. 3, 459 S.E.2d 114. Based on his own testimony and a review of the trial transcript, Mr. Forbes' decision on whether or not to object to the State's evidence was clearly a trial strategy. Contrary to Petitioner's assertion, Mr. Forbes *did* make objections during the trial.[9] At other times, the

---

[9] For instance, Mr. Forbes made the following objections, among others:
- To statements made by the Prosecuting Attorney during his opening remarks. Trial Transcript, Vol. I, p. 108.
- On hearsay grounds to testimony of Trooper Thomas as to what Kathleen White told him had occurred when he arrived on the scene. Trial Transcript, Vol. II, pp. 11-12. That objection was overruled.
- On hearsay grounds to testimony of Trooper Thomas as to Judy Stewart saying that she left a soda in the decedent's house when she bent down to check him. Trial Transcript, Vol. II, pp. 18-19. That objection was overruled.
- To the Prosecuting Attorney's questioning of Trooper Thomas regarding the inability of Harvey Hersman to give a statement. Trial Transcript, Vol. II, p. 95
- To the Prosecuting Attorney's questioning of Robert White, claiming that the Prosecuting Attorney was attempting to confuse the witness by mentioning a second shot. Trial Transcript, Vol. II, p. 117.
- To Prosecuting Attorney questioning of Robert White, claiming that Prosecuting Attorney was attempting to impeach his own witness. Trial Transcript, Vol. II, p. 128
- To Prosecuting Attorney repeatedly asking Robert White a question when witness hasn't been able to answer the question. Trial Transcript, Vol. II, p. 133
- To Prosecuting Attorney's questioning of Robert White on re-direct being outside the scope of cross-examination. Trial Transcript, Vol. II, p. 139
- During examination of Dr. Mahmoud, asked if he could make his marks permanent on a photograph, so that it could be preserved as part of the record. Trial Transcript, Vol. III, pp. 38-40.
- To question that calls for speculation during Dr. Mahmoud's testimony. Trial Transcript, Vol. III, p. 41. And objected that "[w]e don't need to be overly descriptive" of injuries to the decedent. Trial Transcript, Vol. III, p. 46.
- During testimony of Kathy White, when State sought to introduce the pill crusher that Petitioner had taken from the victim's home and buried with the gun, Mr. Forbes successfully objected to its admissibility as being prejudicial. Trial Transcript, Vol. III, pp. 93-94.
- He also successfully objected to introduction of DVPs Kathy White had against Petitioner as being highly prejudicial. Trial Transcript, Vol. III, p. 94-96.

21

record reveals *why* Mr. Forbes did not object to the introduction of evidence. For instance, on the second day of trial, when discussing the photographs for Dr. Mahoud, Mr. Forbes indicated that he did not object to some of the photographs of injuries such as bullet holes because "they're necessary and informative." Trial Transcript, Vol. III, p. 12. However, he did object to photographs of other injuries such as scrapes and bruises as those could be easily described and could inflame the jury. Trial Transcript, Vol. III, pp. 12-17. Similarly, although Mr. Forbes did not object to the admission of photographs of the crime scene and other items of evidence introduced during Trooper Thomas's testimony, on cross-examination, Mr. Forbes used those photographs and other items as evidence of the intensity of the fight between the Petitioner and Mr. Hersman. Trial Transcript, Vol. II.

Based on all of the foregoing, the Court finds that Mr. Forbes' decision on when to object to the State's evidence was trial strategy and based on what was known and reasonable to Mr. Forbes at the time he made his decisions. Additionally, as discussed in detail above, Mr. Forbes did not object to the admissibility of the *Miranda* form or Petitioner's statement because he did not believe he had any legal basis for an objection. Therefore, Petitioner has failed to prove that Mr. Forbes' actions were deficient under an objective standard of reasonableness, and Petitioner is not entitled to habeas corpus relief on the basis of counsel's trial objections or lack thereof.

---

- To Prosecuting Attorney asking her if she was having an affair with the victim. Trial Transcript, Vol. III, p. 98.
- During Prosecuting Attorney's closing statements to Prosecuting Attorney giving definition of "willfully" from Black's Law Dictionary, which was not in the jury instructions. Trial Transcript, Vol. III, p. 141.

22

### 7. Failure to adequately discuss plea offer

Finally, Petitioner argues that he was denied effective assistance of counsel because Mr. Forbes failed to discuss a voluntary manslaughter plea offer with him. Petitioner recalls counsel discussing a plea with him, but never a plea to voluntary manslaughter. However, Petitioner does not bring forth any clear and convincing evidence that his allegation is true. Contrary to Petitioner's assertion, at the evidentiary hearing, Mr. Forbes testified that he did discuss that plea with Petitioner at Central Regional Jail and tried to get Petitioner to take the plea, but that Petitioner did not want to take it.

In order to succeed on this ground, Petitioner must prove that Mr. Forbes failed to communicate the plea offer, that he would have accepted the plea offer if it had been communicated and that the outcome of the proceedings would have been different had the plea offer been communicated. Petitioner is unable to satisfy this burden. First, Petitioner is unable to prove that Mr. Forbes failed to communicate the plea offer to him. Mr. Forbes' testimony contradicts Petitioner's assertion that the offer was never communicated, and Petitioner produces no evidence to support his allegation that he never knew about the plea offer to voluntary manslaughter.

Even if Mr. Forbes had, in fact, failed to communicate the plea offer to voluntary manslaughter, counsel's deficiency alone would not justify habeas corpus relief. Petitioner must also prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." Syl. Pt. 5, in part, *Miller*, 194 W. Va. 3, 459 S.E.2d 114; *see also*, Syl. Pts. 1, 4, *Becton*, 205 W. Va. 139, 516 S.E.2d 762. In this case, Petitioner has failed to prove the second prong of the *Miller* standard. Petitioner produced no evidence that the results of the

proceedings would have been different if Mr. Forbes had communicated the plea offer to voluntary manslaughter. Specifically, the Petitioner produced no evidence that he would have taken that plea offer. In his Amended Petition, years after his conviction and sentencing, Petitioner now asserts that he would have accepted a plea to voluntary manslaughter. However, this Court questions the veracity of Petitioner's statement. At the time of trial, Petitioner was adamant that he should be found not guilty on the grounds of self-defense, and based on Mr. Forbes' testimony, Petitioner made a conscious decision to not accept the plea offer even though he knew he was charged with First Degree Murder. Petitioner's argument exemplifies the adage that "hindsight is 20/20." Now, after conviction and sentencing, it is easy for Petitioner to see that it would have behooved him to accept a plea to Voluntary Manslaughter. Petitioner's post-sentencing reflection that he should have taken the plea offer is not evidence that the outcome would have been different in the case.

For all of the foregoing reasons, the Petitioner has failed to show that he is entitled to habeas corpus relief on the basis of his counsel's allegedly ineffective representation regarding the plea offer.

In conclusion, Petitioner makes numerous allegations of ways he claims Mr. Forbes' representation was inadequate. However, Petitioner has failed to prove that Mr. Forbes' "performance was deficient under an objective standard of reasonableness." *See, Syl. Pt. 5, in part, Miller,* 194 W. Va. 3, 459 S.E.2d 114, *citing Strickland,* 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). As discussed above, Mr. Forbes' actions and decisions regarding Petitioner's statement, Petitioner's trial testimony, the self-defense jury instruction, Petitioner's competency, jurors, and admissibility of evidence were all trial strategies within the broad range of professionally competent assistance. *See, Syl. Pt. 6, in part, Miller,* 194 W.

24

Va. 3, 459 S.E.2d 114. With respect to the plea offer to voluntary manslaughter, Petitioner simply failed to prove that his counsel did not communicate that offer to him. Therefore, Petitioner was unable to prove that Mr. Forbes failed to satisfy any professional standards.

Even if Mr. Forbes' representation had been deficient, Petitioner never explains how the outcome of the trial would have been different "but for" Mr. Forbes' alleged errors. *See,* Syl. Pt. 5, in part, *Miller,* 194 W. Va. 3, 459 S.E.2d 114. Petitioner presented no evidence that additional challenges or objections to the State's evidence would have prevented any of the evidence from being admitted at trial. Similarly, there is no evidence that the testimony of the Petitioner would have been beneficial to the Petitioner's case or that a competency evaluation would have revealed any deficiency in Petitioner's competency or criminal responsibility. Additionally, Petitioner produced no evidence that the jury's verdict would have been any different had Juror Harper been struck or had the self-defense jury instruction been different.

Moreover, an overwhelming weight of evidence supported the jury's conviction. Even if the Petitioner's counsel had provided ineffective, incompetent assistance, the Petitioner's claim for relief on this basis would nevertheless fail, because the Petitioner suffered no prejudice as a result of any alleged conduct on the part of his counsel. Specifically, after consideration of the first, performance-prong, if it is determined that defense counsel acted incompetently, then it is necessary to address the second prong of the *Miller/Strickland* test: to determine whether such incompetence resulted in any prejudice to the defendant. *See,* Syl. Pt. 5, *Miller,* 194 W. Va. 3, 459 S.E.2d 114. "To demonstrate prejudice, a defendant must prove there is a 'reasonable probability' that, absent the errors, the jury would have reached a different result." *Id.,* 194 W. Va. at 15, 459 S.E.2d at 126, *citing Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068, 80 L.Ed.2d at 698. The Petitioner has

25

failed to meet this burden by failing to produce any evidence to show that, but for counsel's errors, the results of the proceedings would have been different. Syl. Pt. 5, in part, *Miller*, 194 W. Va. 3, 459 S.E.2d 114. Absent any prejudice to the Petitioner as a result of some conduct or omission on the part of his counsel, the Petitioner cannot prevail on his claim for post-conviction relief on the basis of ineffective assistance of counsel.

After reviewing all pertinent evidence and arguments, this Court now concludes, as a matter of law, that any errors or deficiencies in counsel's performance were harmless and did not cause any prejudice to the Petitioner. There was no reasonable probability that the proceeding would have ended differently if not for such alleged errors or tactical decisions. As the West Virginia Supreme Court of Appeals summarized in *State v. White*, 231 W. Va. 270, 744 S.E.2d 668 (2013):

> It is undisputed that on the night of December 2, 2009, the Petitioner went to the home of the victim, Harvey Hersman (hereinafter "Mr. Hersman" or "the victim"), and shot him three times in the head resulting in his death.

*White*, 231 W. Va. at 276, 744 S.E.2d at 674. In discussing the sufficiency of the evidence, the Court further stated:

> Critically, the petitioner proceeded to disarm the victim and then loaded the empty gun and fired a shot into the victim's head. The victim did not die from the first shot. The petitioner then moved closer to the victim and shot him two more times in the head at close range. Thereafter, rather than calling for help, the petitioner left the victim's house and buried the murder weapon. When the evidence is viewed in the light most favorable to the prosecution, it was clearly sufficient to prove first degree murder beyond a reasonable doubt.

*White*, 231 W. Va. at 284, 744 S.E.2d at 682.

Accordingly, this Court concludes that Petitioner has not and is unable to satisfy the second prong of the *Miller* standard, which requires that there be "a reasonable probability

26

that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *See,* Syl. Pt. 5, in part, *Miller,* 194 W. Va. 3, 459 S.E.2d 114, *citing Strickland,* 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674. Petitioner cannot prove this and he is not entitled to habeas corpus relief on the basis of his claims of ineffective assistance of counsel.

### B.    Denial of fair, impartial and objective jury

Petitioner's second ground for habeas corpus relief is on the basis that he was denied a fair, impartial and objective jury. Petitioner claims that Juror Paschke and possibly other jurors had pre-determined the guilt of the Petitioner. In support of his position, the Petitioner raises the same facts and issues that were raised, heard and ruled upon in Petitioner's Motion for a New Trial. Specifically, Petitioner's Motion for a New Trial was heard on May 5, 2011, and a further evidentiary hearing was held on May 27, 2011, at which hearings the Court heard testimony from various witnesses regarding the alleged misconduct of Juror Paschke.[10] This Court denied Petitioner's Motion for a New Trial by written order entered on July 20, 2011. Upon appeal, the West Virginia Supreme Court of Appeals affirmed this Court's decision, stating that "as the trial court determined in its order denying the petitioner's motion for a new trial, 'the juror violations alleged by the defendant in his Motion for a New Trial were not shown to have occurred.'" *White,* 231 W. Va. at 287, 744 S.E.2d at 685.

As all contentions involving the alleged misconduct of Juror Paschke were addressed in the direct appeal, this issue has been "previously and finally adjudicated". W. Va. Code § 53-4A-1(a). Accordingly, Petitioner is not entitled to habeas corpus relief on the basis that he was denied a fair, impartial and objective jury. *Id.*

---

[10] *See,* Paragraphs 18 and 19, page 4, *supra.*

27

## C. Prosecutorial Misconduct

As his third ground for habeas corpus relief, Petitioner cites the alleged prosecutorial misconduct in failing to disclose that the witness, Judy Stewart, stated that she moved the victim's body. Again, Petitioner argues facts and issues that were "previously and finally adjudicated" on direct appeal. W. Va. Code § 53-4A-1(a). Considering this issue on appeal, the West Virginia Supreme Court of Appeals found these arguments "to be totally without merit", so only addressed the issue in a footnote. *White*, 231 W. Va. at 285 n.18, 744 S.E.2d at 683 n.18. The Supreme Court's complete discussion of the alleged prosecutorial misconduct related to the witness, Judy Stewart, is as follows:

> The petitioner further argues that the prosecutor failed to disclose exculpatory evidence that the victim's girlfriend "moved" the body when she arrived at his home after the petitioner left, thereby contaminating the crime scene. Prior to trial, the victim's girlfriend executed an affidavit in which she stated that, upon finding the body, she touched it to see if the victim would respond but that she did not move it any way. The trial court properly concluded that this evidence was not exculpatory and that there was no misconduct by the prosecutor.

*Id.* (emphasis added). Accordingly, Petitioner is not entitled to habeas corpus relief on the basis of the alleged prosecutorial misconduct related to Judy Stewart because the issue was "previously and finally adjudicated." W. Va. Code § 53-4A-1(a).

## D. Insufficient evidence existed at trial to convict on "first degree murder"

Lastly, Petitioner seeks habeas corpus relief on the ground that insufficient evidence existed at trial to convict him of First Degree Murder. This ground, too, was "previously and finally adjudicated" on appeal and is not a proper basis for habeas corpus relief. W. Va. Code § 53-4A-1(a). On appeal, the West Virginia Supreme Court of Appeals thoroughly addressed

28

the sufficiency of the evidence. *White*, 231 W. Va. at 281-84, 744 S.E.2d at 679-82.

Specifically, the West Virginia Supreme Court of Appeals ruled that:

> In this case, there was sufficient evidence from which the jury could have found the existence of these elements of first degree murder. With regard to malice, the petitioner's feeling of ill-will toward the victim established from his statement to the police. . . . Indeed, the evidence proved that the petitioner strongly disliked the victim and had a volatile history with him involving the petitioner's former wife.
>
> As for premeditation and deliberation, the evidence showed that the petitioner went to the victim's house with a knife in hand and the police found an opened knife lying underneath Mr. Hersman's body. Further the petitioner's son testified that he attempted to get his father to leave Mr. Hersman's house three times. Instead of leaving, the petitioner followed the victim into his kitchen. Critically, the petitioner proceeded to disarm the victim and then loaded the empty gun and fired a shot into the victim's head. The victim did not die from the first shot. The petitioner then moved closer to the victim and shot him two more times in the head at close range. Thereafter, rather than calling for help, the petitioner left the victim's house and buried the murder weapon. <u>When the evidence is viewed in the light most favorable to the prosecution, it was clearly sufficient to prove first degree murder beyond a reasonable doubt.</u>

*White*, 231 W. Va. at 284, 744 S.E.2d at 682 (emphasis added).

Based on the foregoing findings of fact and discussion, this Court now concludes as a matter of law that the Petitioner's claims for a new trial are without merit. The Court finds that the Petitioner has failed to meet his burden of proving that he is entitled to habeas corpus relief.

Accordingly, the Court does hereby **ORDER** that:

1.  Petitioner's *Pro Se* Petition and Amended Petition are **DENIED**; and

2.  The Writ of Habeas Corpus sought by the Petitioner is refused; and

3.  It is further **ORDERED** that this case is hereby **DISMISSED** from the docket of this Court.

29

4. If the Petitioner desires to appeal this dismissal to the Supreme Court of Appeals of West Virginia, the Petitioner shall file with this Court a properly completed Notice of Appeal pursuant to the RULES OF APPELLATE PROCEDURE; and, if necessary, a properly completed Application To Proceed *In Forma Pauper* and Affidavit as set forth in Appendix B of THE RULES GOVERNING POST-CONVICTION HABEAS CORPUS PROCEEDINGS. These materials are to be filed with the Office of the Clerk of the Supreme Court of Appeals of West Virginia no later than thirty (30) days from the entry of this Order.

5. **This is a Final Order.** The Clerk of the Circuit Court shall remove this matter from the docket and send a certified copy of this Order to: Christopher S. Moorehead, 219 North Court Street, Fayetteville, WV 25840; and Jonathan C. Sweeney, Nicholas County Prosecuting Attorney, 511 Church Street, 203 Courthouse Annex, Summersville, WV 26651.

ENTER: _12 - 29-16_

Hon. Gary L. Johnson, Circuit Judge

A true copy, certified this
_29_ day of _Dec_ 20 _16_

DEBBIE FACEMIRE CIRCUIT CLERK
Nicholas County Circuit Court
Summersville, WV 26651
By_____ CB , Deputy

30